IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-00932-RBJ

DIREXA ENGINEERING, LLC,

    Plaintiff,

v.

U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
LOREN K. MILLER, Director USCIS Nebraska Service Center, and
OFFICER 0265, USCIS Nebraska Service Center,

    Defendants.

ORDER ON THE CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross motions for summary judgment from plaintiff Direxa Engineering, LLC (ECF No. 29) and defendants U.S. Citizenship and Immigration Services ("USCIS"), Loren Miller, and Officer 0265 (ECF No. 31). For the reasons discussed below, plaintiff Direxa's motion is GRANTED, and defendants' motion is DENIED.

## I.    BACKGROUND

This case is the result of USCIS's denial of Direxa's application for an I-140 visa on behalf of Clement Cadier. Mr. Cadier is a citizen of France and Brazil who serves as deputy president at Direxa's headquarters in Colorado. ECF No. 27-1 at 105. Before moving to Colorado on a temporary L-1A visa, Mr. Cadier was president at Direxa do Brazil, a subsidiary of Direxa. *Id.* at 106. He founded the company in 2010 and remained there as president until he moved to Colorado in 2018. *Id.* At Direxa do Brazil, he reported directly to Mr. Aubertot,

Direxa's president, and directly supervised an officer manager, a chief commissioning engineer, and a managing engineer who supervised a design engineer. *Id.* at 11.  Later, he founded Equipicer Industria, a Brazilian manufacturing company that works with Direxa. *Id.* at 106.

After moving to Colorado, he began serving as deputy president for Direxa. *Id.* at 105. He continued to report directly to Mr. Aubertot. *Id.*  As deputy president, Mr. Cadier co-supervises four departments with a total of fourteen employees. *See* ECF No. 27-2 at 55.

On January 15, 2019, Direxa submitted its Form I-140 petition for alien worker (PAW) on behalf of Mr. Cadier on the theory that Mr. Cadier is a manager and therefore entitled to a I-140 visa under 8 U.S.C. §1153(b)(1)(C).  ECF No. 27-1 at 105.  USCIS responded with a request for evidence (RFE) on June 25, 2019.  *Id.* at 100.  It requested additional evidence regarding Mr. Cadier's status as a manager as well as evidence regarding some other issues.  *Id.*  USCIS received Direxa's response to the RFE on September 13, 2019.  *Id.*  USCIS denied that PAW on October 22, 2019.  *Id.* at 98.  Direxa initially filed an administrative appeal but withdrew it, choosing instead to file the instant suit in April 2020.  *Id.* at 85–90.  After Direxa filed suit, USCIS reopened Mr. Cadier's case and issued a second RFE on October 15, 2020.  *Id.* at 34–37. Direxa responded to the second RFE on November 19, 2020.  *Id.* at 39.  USCIS again denied the PAW on December 22, 2020.  *Id.* at 1.  Direxa filed an amended complaint in this case on December 23, 2020.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  An

issue of fact is material if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the burden of showing a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Conclusory statements or those based on speculation, conjecture, or surmise provide no probative value on summary judgment; nor may the nonmovant rely on 'mere reargument of his case or a denial of an opponent's allegation.'" *Stuart v. Erickson Living Mgmt.*, No. 18-CV-01083-PAB-NYW, 2019 WL 7289016 at *2 (D. Colo. July 29, 2019) (quoting 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998)).

Judgment as a matter of law is appropriate when the evidence is not susceptible to any reasonable inferences that support the non-moving party's position. *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1224 (10th Cir. 2016) (quoting *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013)). A party is entitled to judgment as a matter of law "only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law. *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir. 2011) (quoting *Wagner v. Live Nation Motor Sports, Inc.*, 586 F.3d 1237, 1244 (10th Cir. 2009)).

In applying this standard where there are cross motions for summary judgment, "the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party." *Chateau Vill. N. Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, 170 F. Supp. 3d 1349, 1355 (D. Colo. 2016). When parties have filed cross motions for summary judgment, the Court can assume that no evidence need be considered other than that filed by the parties, but "summary judgment is nevertheless inappropriate if disputes

remain as to material facts." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

Under the APA, an agency decision will be upheld unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Mahalaxmi Amba Jewelers v. Johnson*, 652 F. App'x 612, 615 (10th Cir. 2016) (unpublished). Agency action is considered arbitrary and capricious "if the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citing *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014)). Agency decisions are presumed valid, and the party challenging an agency decision bears the burden of proof. *Id.* Courts can "uphold administrative action when an agency gives two independent reasons and only one of them is valid." *Zzyym v. Pompeo*, 958 F.3d 1014, 1033–34 (10th Cir. 2020).

### III.   ANALYSIS

1. **There is no Genuine Dispute of Material Fact**

The parties in this case agree about almost every fact. Direxa submitted the application on behalf of Mr. Cadier in January of 2019. Defendants made a request for evidence on June 25, 2019. Direxa responded to the first RFE. Defendants denied the application on October 22, 2019. On October 15, 2020 defendants reopened the application and issued the second RFE. Direxa provided some additional documents and affidavits. USCIS denied the application again on December 22, 2020. There is only one purported fact, pled by Direxa, that is disputed:

whether the Certified Administrative Record ("CAR") indicates that Mr. Cadier's status has been vetted and approved by government agents twenty-two times. ECF No. 31 at 20; ECF No. 29 at 3–4.

This is not actually a dispute of fact. The parties do not dispute that Mr. Cadier was admitted to the United States on his L-1A visas twenty-two times, and that Department of Homeland Security and Border Protection ("CBP") agents admitted him under that visa. ECF Nos. 27-2 at 1, 29. They do not dispute that Mr. Cadier's L-1A visa was approved by USCIS and the Department of State. *Id.* The parties dispute the legal ramifications of Mr. Cadier's entries, which were subject to CBP approval, and of his being issued L-1A visas by USCIS and the State Department. As there is no genuine dispute of material fact, summary judgment is appropriate.

2. **Plaintiff Has Not Shown that Defendants Failed to Consider Any Important Aspect of the Problem in Their Denial of the PAW**

Direxa argues that, in denying the PAW, defendants failed to consider that USCIS and the State Department had already adjudicated and approved Mr. Cadier's status as a multinational manager when they granted Mr. Cadier an L-1A visa. ECF No. 29. USCIS uses the same definition of "managerial" in granting L-1A visas and I-140 petitions.[1] Therefore, Direxa suggests, defendants are bound by their prior grant of L-1A visas on the issue of Mr. Cadier's status as a multinational manager. *Id.*

I disagree. USCIS is "not required to approve applications or petitions where eligibility had not been demonstrated, merely because of prior approvals which may have been erroneous."

---

[1] The same factors for determining managerial status are used for both visas granting permanent residence and visas for nonimmigrant workers. *See* 8 U.S.C. § 101(a)(44)(A)–(C) (1952), 8 C.F.R. § 204.5(j).

*Mahalaxmi Amba Jewelers v. Johnson*, 652 F. App'x 612, 618 (10th Cir. 2016) (unpublished) (quoting *Matter of Church Scientology Int'l*, 19 I&N Dec. 593, 597 (BIA 1988)).  The rule proposed by Direxa would "impermissibly shift the burden to establish eligibility for a visa from the petitioner to the agency."  *Id.*  The benefits from an L-1A visa (temporary non-immigrant status) and from an I-140 visa (permanent residence) are distinct—a prior grant of an L-1A visa does not necessitate later approval of a related I-140 petition.  *Id.*

In sum, Direxa has not shown that it is entitled to judgment as a matter of law based on Mr. Cadier's past L-1A visa approval.

### 3. **Plaintiff Has Shown that Defendants Made a Decision Counter to the Evidence Before Them.**

Direxa argues that defendants' decision was counter to the evidence before them because Direxa submitted 114 pages in support of the PAW, an additional 182 pages of evidence in response to the first RFE, and an additional twenty-eight pages in response to the second RFE.  It argues that managerial status need only be established by a preponderance of the evidence, and Direxa has easily met that standard with its avalanche of documentation.  ECF No. 26.

"A petitioner or applicant in administrative immigration proceedings must prove by a preponderance of evidence that he or she is eligible for the benefit sought."  *Matter of Chawathe*, 25 I&N Dec. 369, 375 (AAO 2010).  Under the preponderance of the evidence standard, the evidence must "demonstrate that the applicant's claim is 'probably true,' where the determination of 'truth' is made based on the factual circumstances of each individual case."  *Id.* (quoting *Matter of E-M-*, 20 I&N Dec. 77, 79–80 (Comm'r 1989).  When adjudicating an application under a preponderance of the evidence standard, "the director must examine each piece of evidence for relevance, probative value, and credibility, both individually and within the

context of the totality of the evidence, to determine whether the fact to be proven is probably true." *Id.*

Direxa was required to "furnish a job offer in the form of a statement which indicates that the alien is to be employed in the United States in a managerial or executive capacity." 8 C.F.R. § 204.5(j)(5). That letter must "clearly describe the duties to be performed by the alien." *Id.* That the duties be clearly described is important—if USCIS does not know the specific duties the applicant will have, it cannot tell if the applicant is a manager entitled to a I-140 visa under §1153(b)(1)(C). To receive a I-140 visa under §1153(b)(1)(C), the petition must show: (1) "in the three years immediately preceding the filing of the petition the alien has been employed outside the United States for at least one year in a managerial or executive capacity…" and (2) the alien is to be employed inside the United States "as a multinational executive or manager." 8 C.F.R. § 204.5(j).

To be considered a manager eligible for a I-140 visa, the applicant must primarily: (1) manage "the organization or a department, subdivision, function or component of the organization; (2) supervise or control "the work of other supervisory, professional, or managerial employees" or manage an essential function within the organization; (3) have the authority to "hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization)"; and (4) exercise "discretion over the day-to-day operations of the activity or function for which the employee has authority." 8 C.F.R § 204.5(j). "General descriptions are inadequate to satisfy the implementing regulations because, as one court has observed, '[t]he actual duties themselves reveal the true nature of the employment.'" *Saga Overseas, LLC v. Johnson*, 200 F. Supp. 3d 1341, 1348 (S.D. Fla. 2016) (quoting *Fedin Bros. Co. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y.1989)).

USCIS found that Mr. Cadier was not entitled to permanent residency because the PAW did not lay out his job duties with sufficient specificity, and because there were internal discrepancies in the description of his job duties and the documents Direxa provided.  *See* ECF No. 27-1 at 3–5, 8.  Direxa argues that it was arbitrary and capricious for the USCIS to deny the PAW because it had established that Mr. Cadier was a manager in the United States and in Brazil by a preponderance of the evidence.  In Mr. Cadier's case, USCIS's denial of the PAW was arbitrary and capricious

a.  Mr. Cadier's Managerial Status for his Prior Position Abroad

Here, I find that USCIS's explanation for the denial of Mr. Cadier's PAW on the basis of his managerial status for his job in the United States was counter to the evidence before the agency.  Direxa provided a list of job duties and the percentage of Mr. Cadier's time that was allocated to each duty.  ECF No. 27-1 at 105–06.  USCIS argues, and asserted in its first and second RFEs, that the job duties provided were not sufficiently outlined for Direxa to show by a preponderance of the evidence that Mr. Cadier was a manager.  The duties listed in the PAW were as follows:

1. Direct or coordinate an organization's financial or budget activities to fund operations, maximize investments, or increase efficiency.
2. Appoint department heads or managers and assign or delegate responsibilities to them.
3. Analyze operations to evaluate performance of a company or its staff in meeting objectives or to determine areas of potential cost reduction, program improvement, or policy change.
4. Direct, plan, or implement policies, objectives, or activities of organizations or businesses to ensure continuing operations, to maximize returns on investments, or to increase productivity.
5. Confer with board members, organization officials, or staff members to discuss issues, coordinate activities, or resolve problems.
6. Implement corrective action plans to solve organizational or departmental problems.
7. Direct human resources activities, including the approval of human resource plans or activities, the selection of directors or other high-level staff, or establishment or organization of major departments.

8. Preside over or serve on boards of directors, management committees, or other governing boards.
9. Negotiate or approve contracts or agreements with suppliers, distributors, federal or state agencies, or other organizational entities.
10. Coordinate the development or implementation of budgetary control systems, recordkeeping systems or other administrative control processes.
11. Review reports submitted by staff members to recommend approval or to suggest changes.
12. Deliver speeches, write articles, or present information at meetings or conventions to promote services, exchange ideas, or accomplish objectives.
13. Interpret and explain policies, rules, regulations, or laws to organizations, government or corporate officials, or individuals.
14. Direct or coordinate activities of businesses of departments concerned with production, pricing, sales, or distribution of products.
15. Direct non-merchandising departments, such as advertising, purchasing credit, or accounting.
16. Represent organizations or promote their objectives at official functions or delegate representatives to do so.
17. Organize or approve promotional campaigns.
ECF No. 27-1 at 3–4.

Some of the job duties were not specific enough to allow USCIS to understand whether Mr. Cadier's primary duties when working in Brazil were managerial. For instance, the duty of directing or coordinating an "organization's financial or budget activities to fund operations, maximize investments, or increase efficiency," does not tell me what Mr. Cadier did to direct or coordinate those activities. ECF No. 27-1 at 1–5. I would need more information to understand what that duty looked like on a daily basis. Likewise, the duty to "analyze operations to evaluate performance of a company or its staff in meeting objectives or to determine areas of potential cost reduction, program improvement, or policy change," is too broad to give USCIS a sufficient understanding of what Mr. Cadier did to "analyze operations." *Id.*

However, some of these job duties were sufficiently outlined to give USCIS a clear enough picture of Mr. Cadier's day-to-day. I find that the job duty of directing or coordinating "activities of businesses or departments concerned with production, pricing, sales, or distribution of products" is sufficiently clear that USCIS would understand what this duty looked like on a

day-to-day basis. What direction and coordination of various departments looks like will vary day-to-day, but this is not as vague as the duty of directing and coordinating the organization's "financial or budget activities." Directing the departments listed is clear—Mr. Cadier's duty was to ensure that those departments were achieving their goals and meeting the expectations and needs of the company. By asking for more clarity on this job duty, USCIS was asking Direxa to divulge what each of those departments do—their projects, their goals, their deadlines. That information is not necessary to determine whether this duty was managerial. If Mr. Cadier was directing or coordinating the activities of various departments, that is a managerial task. Direxa stated in the PAW that this duty accounted for twenty-five percent of Mr. Cadier's time. ECF No. 27-1 at 107.

Direxa submitted that Mr. Cadier negotiated or approved "contracts or agreements with suppliers, distributors, or other organizational entities." This is clear enough to understand what Mr. Cadier did. Negotiating a contract is a clear activity and needs no further clarification. Similarly, the duty to "confer with staff members to discuss issues, coordinate activities, or resolve problems" is sufficiently specific for the USCIS to understand his daily activities. This job duty could have been more specifically outlined by including the types of issues discussed, activities coordinated, or problems resolved, but it is not so vague that the USCIS could not understand what this duty of Mr. Cadier's entailed. Those two duties accounted for thirty-two percent of Mr. Cadier's job duties, according to Direxa's computation. ECF No. 27-1 at 107.

In response to USCIS's second RFE, Direxa submitted three affidavits from Direxa president Christopher Aubertot, vice president Julia Peltzer, and general manager of Direxa do Brazil Renato Alberti. ECF No. 27-1 at 5, 11, 39–67. Ms. Peltzer explained what "directing or coordinating Direxa's financial or budget activities" looked like for Mr. Cadier. She gave an

example that occurred once Mr. Cadier had relocated to Denver: Mr. Cadier had "further developed the EquipCer shop in Brazil to make simple equipment we could buy for the USA from our own subsidiary instead of buying it from side suppliers in Europe." ECF No. 27-1 at 64. This example occurred after Mr. Cadier had relocated to Colorado, but it is still helpful in explaining the specifics of the job duty when he was working abroad. This job duty entails finding or creating ways for Direxa to save money. While Mr. Cadier might go about this in a variety of ways, this example makes clear that he was operating as a manager in performing this duty. He was not making sure everyone turned off the lights in their office when they went home for the day to save on the electric bill. He was engaging in high level strategy on how to make Direxa more profitable.

  USCIS also argues that the information from Ms. Peltzer should be disregarded because there are discrepancies between her descriptions of the job duties and other documents produced with the PAW or with the first and second RFEs. In the second duty described by Ms. Peltzer, which does not occur in the original list of duties provided in the PAW, Ms. Peltzer describes Mr. Cadier's duty as involving work with Direxa's chief financial officer (CFO). ECF No. 27-1 at 65–66. The organizational chart provided by Direxa does not have a CFO listed. ECF No. 27-2 at 55. Additionally, because this duty was not included with the initial list of duties, there is no indication of how much of Mr. Cadier's time this duty took up. Without that information, this duty does not help the USCIS determine whether Mr. Cadier performs primarily managerial duties.

  Another inconsistency in Ms. Peltzer's affidavit concerns the duty of "directing, planning and implementing policies, objectives, or activities to ensure continuing operations, to maximize returns on investments, and to increase activity." Ms. Peltzer wrote that Mr. Cadier oversaw

redesigning Direxa's website, developing marketing and technological solutions after analysis of customers' problems, attending industry conventions and managing our independent agents." ECF No. 27-1 at 65.  Ms. Peltzer wrote that in performing this duty, Mr. Cadier "works closely with our IT department." *Id.*  USCIS points out that this statement is inconsistent with the organizational chart provided by Direxa.  In that chart, there is no IT department listed.  *See* ECF No. 27-2 at 55.  However, these inconsistencies are a reason to discount certain parts of Ms. Peltzer's affidavit, not throw out her statement entirely.

Even excluding the two duties supported by Ms. Peltzer's inconsistent affidavit, the evidence indicates that more than half of Mr. Cadier's duties were managerial.  Of the seventeen job duties that Direxa claimed Mr. Cadier performed, I find that either on their own, or with the additional information provided by Ms. Peltzer, ten of the job duties, representing just over fifty percent of Mr. Cadier's time, are sufficiently specific that USCIS should have determined that his duties were managerial.[2]

USCIS also argued that Mr. Cadier's seventeen job duties were pulled directly from an employment database's description of chief executive officers.  ECF No. 27-1 at 9.  However, that does not change my analysis of Mr. Cadier's job duties.  If those duties are sufficiently specific as to Mr. Cadier and the evidence shows that he did perform those duties, where the specific language came from is of no importance to me.

Ultimately, USCIS painted with too broad a brush when it found that all the job duties listed in the PAW were too vague to show by a preponderance of the evidence that the majority of Mr. Cadier's duties were not managerial.  Its explanation for its decision was that all of the

---

[2] The ten job duties I find sufficiently specific are the first, second, fifth, sixth, seventh, eighth, ninth, twelfth, thirteenth, and fourteenth as listed in the PAW.  These duties comprise 75.5% of Mr. Cadier's listed duties and do not include the duties implicated by the inconsistency in Ms. Peltzer's statement.

duties disclosed in the PAW were too vague and only a few were rendered sufficiently specific by Ms. Peltzer's affidavit. That explanation is counter to the evidence before it.

Other than the two inconsistencies in Ms. Peltzer's affidavit, all three affidavits describing the work done by Mr. Cadier are consistent with the job duties specifically outlined in the PAW, as is the organizational chart from his time in Brazil. USCIS should only require clarification for job duties that are actually unclear based on the evidence submitted. Here, based on Mr. Cadier's position at Direxa do Brazil, the affidavits, and the organizational chart outlining who reported to him, a sufficient number of job duties can be identified as managerial for Mr. Cadier to have met his duty of showing, by a preponderance of the evidence, that his duties were primarily managerial in nature. It was arbitrary and capricious to find Direxa's PAW failed to show that Mr. Cadier's position in Brazil was not primarily managerial following the second RFE.

b. Mr. Cadier's Managerial Status for his Position in the United States

Direxa submitted the same list of job duties regarding Mr. Cadier's position in the United States. If anything, Mr. Aubertot and Ms. Peltzer's affidavits speak more to Mr. Cadier's duties in his position in the United States. As a result, the analysis of whether his position was managerial in Brazil applies with equal or greater force to his position in the United States.

**ORDER**

1. Direxa's motion for summary judgment, ECF No. 29, is GRANTED. Defendant's motion for summary judgment, ECF No. 31, is DENIED.

2. The Court vacates the denial of Direxa's I-140 petition and remands this matter with instructions that, within ten calendar days of the date of this order, defendants approve the Form I-140 Immigration Petition for Alien Worker filed by Direxa.

3. The Court awards costs to the plaintiff to be taxed by the Clerk Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. Before any application is filed pursuant to 28 U.S.C. § 2411(d) or 5 U.S.C. § 504, the parties shall confer and attempt to reach an agreement.

DATED this 3rd day of December, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge